UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:09-cv-346-KSF

WEST AMERICAN INSURANCE COMPANY                                    PLAINTIFF

VS.                              **OPINION & ORDER**

SHERRY MILLER, as Personal
Representative of the Estate of
Donnie C. Miller, Deceased, et al                                  DEFENDANTS

* * * * * * *

Currently pending before the Court are the defendants' Motion to Dismiss, the plaintiff's Motion for Declaratory Judgment, the defendant's Motion for Leave to File First Amended Counterclaim and defendant's Motion for Discovery.  Each Motion is discussed below.

This is a declaratory judgment action filed by West American Insurance Company ("West American") against Sherry Miller, as personal representative of the estate of Donnie C. Miller, deceased, ("Miller"), Donald Lewis and Fran Lewis ("Lewises") (collectively, the Lewises and Miller are referred to herein as "Defendants").  West American seeks an order declaring that it has no obligation to defend and no obligation to indemnify Miller for any and all claims arising out of an altercation that occurred January 26, 2008, between Mr. Miller and Mr. Lewis that is the subject of litigation between Mr. Miller's estate and the Lewises in a Florida court.

1

## I.     FACTUAL AND PROCEDURAL BACKGROUND

On January 26, 2008, while at a restaurant in Marco Island, Florida, Mr. Miller and Michael Marks were involved in a physical altercation with each other.  Mr. Lewis, who was the manager of the restaurant, attempted to intervene in the altercation.  At one point, all three men fell to the ground and Mr. Lewis allegedly sustained injuries in that fall.  Mr. Miller was arrested and charged with felony battery.  Mr. Miller entered a nolo contendere plea to a lesser charge of misdemeanor battery and was ordered to pay restitution to Mr. Lewis.  Mr. Lewis received over $18,000 in court ordered restitution from Mr. Miller.  Subsequently, the Lewises filed a civil suit against Miller's estate in a Florida court for damages arising out of their injuries.  Mr. Miller sought coverage for the Lewises' claims under a homeowner's policy with West American.

West American filed a Complaint for Declaratory Judgment to determine its obligations under the policy for the loss.  West American asserts that it has no obligation to defend and no obligation to indemnify Miller for the claims arising out of the altercation because coverage is specifically excluded by the terms of the insurance policy.  The West American insurance policy provision at issue excludes coverage for "bodily injury" or "property damage" which is "expected or intended by an 'insured' even if the 'bodily injury' or 'property damage': a. Is of a different kind, quality or degree than initially expected or intended; or b. Is sustained by a different person, entity, real or personal property, than initially expected or intended."

The Lewises filed a Motion to Dismiss the Complaint for failure to state and claim and pursuant to this Court's discretionary authority to decline to exercise jurisdiction.

In her Answer, Miller asserted a counterclaim for indemnity, noting that West American should be obligated to pay any damages for which it becomes legally obligated to pay as a result of the underlying tortious conduct. Miller then filed the pending Motion for Leave to file a First

Amended Counterclaim asserting a first-party bad faith claim against West American. Miller also filed the pending Motion for Discovery asking the Court to allow discovery prior to ruling on West American's Motion for Declaratory Judgment.

## II.   ANALYSIS

### A.   The Lewises' Motion to Dismiss and West American's Motion for Declaratory Judgment

In their Motion to Dismiss, the Lewises argue that West American's Complaint fails to state a claim because neither the Complaint, nor the underlying personal injury complaint incorporated therein, allege that Mr. Miller subjectively intended to injure Mr. Lewis so the policy exclusion does not apply.  Alternatively, the Lewises argue that the Court should use its discretion and decline to exercise jurisdiction over the action because the questions concerning Mr. Miller's mental state and the nature of the tort committed are pending before a Florida court in the underlying personal injury action between the Lewises and the Miller Estate.[1]

In response to the Lewises' Motion to Dismiss and in support of its Motion for Declaratory Judgment, West American argues that "subjective intent" is not required for the policy exclusion to apply.  Further, West American argues that Mr. Miller's altercation with Mr. Marks was inherently likely to cause injury to Mr. Marks and innocent bystanders such as Mr. Lewis.  Additionally, West American argues that the Lewises are estopped from claiming that Mr. Miller lacked subjective intent to cause harm.  Finally, West American contends that even if Mr. Miller intended to injure only Mr. Marks, the doctrine of transferred intent and the explicit policy language would bar coverage for Mr. Lewis' injuries.  West American also argues that the

---

[1] In her Response to West American's Motion for Declaratory Judgment, Miller argues that West American's Complaint should be dismissed for many of the same reasons set forth in the Lewises' Motion to Dismiss but she did not file a separate motion.

Court should use its discretion to exercise jurisdiction over this matter because the factors set forth in *Bituminous Casualty Corporation v. J & L Lumber Co.*, 373 F.3d 807, 813 (6th Cir. 2004), weigh in favor of doing so.

        1.    <u>Whether the Court Should Use Its Discretionary Authority to Decline to Exercise Jurisdiction</u>

While the Court has jurisdiction over this action under the Declaratory Judgment Act, it must determine whether it *should* exercise its discretion in deciding whether to declare the rights of the parties. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). District courts exercise this discretion cautiously. The Court finds that it should use its discretionary authority to exercise jurisdiction over this matter.

The Sixth Circuit has created five factors that courts should consider:

1)     whether the judgment would settle the controversy;
2)     whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
3)     whether the declaratory remedy is being used merely for the purpose of "procedural fencing or "to provide an arena for the race to res judicata;
4)     whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and
5)     whether there is an alternative remedy that is better or more effective.

*Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 813 (6th Cir. 2004).

        a.    *Factors One and Two: Will the Action Settle the Controversy or Clarify the Legal Relations at Issue?*

The first two factors are so closely related that courts often consider them together. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 557 (6th Cir. 2008). When determining the first factor, courts are to look at the underlying facts: "i.e., whether the question was already being or could be considered in state court, whether the parties were the same in state and federal court, whether parties in the state action would be bound by the federal court action to which they were

4

not a part, whether the issue was one being developed by state court discovery, and whether the scope of coverage or obligation to defend was before the state court." *Grange Mut. Cas. Co. v. Safeco Ins. Co.*, 565 F. Supp. 2d 779, 786 (E.D. Ky. 2008).

As the *Grange Mutual* court pointed out, the Sixth Circuit is split on whether the provision "settle the controversy" in the first factor means the immediate or the ultimate controversy. Similarly, that court noted that the Circuit is "split on the second factor's question of 'whether the district court's decision must only clarify the legal relations presented in the declaratory judgment action or whether it must also clarify the legal relations in the underlying state action.'" *Id.* at 787 (quoting *Scottsdale Ins. Co.*, 513 f.3d at 557). The *Grange Mutual* court reconciled the split by explaining that the first factor is meant to measure whether the action will terminate or settle the ultimate controversy, while the other is meant to measure the usefulness of the action in clarifying discrete legal relations at issue. "Thus, while one factor asks whether the federal court can decide all the issues and end all litigation amongst all the parties, the other factor asks whether the federal court's decision could provide a complete resolution to at least one issue, deciding the rights and obligations and completely ending the litigation between at least two parties." *Grange Mut. Ins. Co.*, 565 F. Supp. 2d at 788. This Court agrees with the *Grange* court's reasoning and will apply it in this case.

In this matter, the ultimate controversy is whether Mr. Miller's estate is liable to the Lewises for Mr. Miller's actions in Florida and the legal relations at issue in this declaratory judgment action are whether West American has an obligation to indemnify and to defend Mr. Miller's estate in the Florida action. The declaratory judgment action would not settle the ultimate controversy between all of the parties – factor one – but it would clarify the legal

relations at issue – factor two.   Thus, the first factor weighs against exercising jurisdiction while the second factor does the opposite.

> b.    *Factor Three: Is this a Race for Res Judicata?*

The third factor is intended to prevent parties from improperly using federal jurisdiction merely to gain a favorable forum and courts have been "reluctant to impute an improper motive . . . where there is no evidence of such in the record."  *Scottsdale*, 513 F.3d at 558.  There is no evidence that West American is engaging in "procedural fencing" or a "race for res judicata" by filing its declaratory judgment action in federal court.

> c.    *Factor Four: Will the Action Increase Friction Between State and Federal Courts?*

The fourth factor evaluates whether the court's exercise of jurisdiction would increase friction with state courts.  There are three sub-factors that must be considered whether:

1) the underlying factual issues are important to an informed resolution of the case;
2) the state trial court is in a better position to evaluate those factual issues than is the federal court; and
3) there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Scottsdale Ins. Co.*, 513 F.3d at 560.

Here, the state court action will determine Mr. Miller's alleged negligence and the extent of the Lewises' injuries allegedly caused by that negligence.  The federal proceeding, however, deals exclusively with the issue of West American's liability to cover Mr. Miller's estate under its insurance policy and would focus on the factual issue of whether the bodily injury was "expected" or "intended" so as to make it excluded under the policy.  This factual issue is not

likely to be in front of the state court.  Since the issues in the two cases are distinct, this sub-factor weighs in favor of exercising jurisdiction.

The second sub-factor focuses on which court is in a better position to resolve the issue in the declaratory action.  States are normally in a better position to resolve insurance issues because insurance companies are regulated by states for the benefit of their citizens.  In this case, however, a Florida state court can hardly be said to be in a better position to evaluate Kentucky insurance law than a Kentucky federal court.  Further, West American is not a party to the state action, and the scope of coverage and the duty to defend are not before the state court, so a federal court decision on these issues is appropriate.  *Scottsdale Ins. Co.*, 513 F.3d at 560-61.  Thus, this sub-factor weighs in favor of exercising jurisdiction.

The third sub-factor focuses on whether the issue implicates important state policies.  As noted above, states are usually in a better position to resolve insurance disputes because they are more familiar with state law, they regulate the insurance companies for the benefit of their citizens and are best situated to identify and enforce policies underlying those regulations.  In this case, however, the state issues implicated are not those of Florida but those of Kentucky, so having it heard before a Florida court is less beneficial than it being heard before this Court.  Thus, this factor weighs in favor of exercising jurisdiction.

In total, the fourth factor weighs in favor of exercising jurisdiction.  The state court's resolution of factual issues is not necessary and either state or federal court is capable of deciding this case.  Further, a Kentucky federal court is more familiar and better able to handle issues of Kentucky law than is a Florida state court.

> d.    *Factor Five: Availability of an Alternative Remedy?*

Kentucky law provides an alternative remedy to declaratory judgment in federal court. West American could have filed a petition for declaratory judgment in Kentucky state court under Ky. Rev. Stat. Ann. Section 418.040. The Sixth Circuit is split on whether the state court remedy must be better or more effective than a federal declaratory action or simply provide an alternative remedy for the purposes of this factor. Further, West American could have intervened in the pending Florida court action. Since there are alternative remedies, this factor weighs against exercising jurisdiction.

> e.    *Balancing*

In deciding how to balance these factors, district courts must rely on the "unique and substantial" discretion granted to them by the Declaratory Judgment Act. *Scottsdale Ins. Co.*, 513 F.3d at 563. This Court considers the first factor as having great weight because allowing everyone to resolve everything in one court promotes efficiency, builds trust in the legal system and allows parties to preserve resources. Nonetheless, the Court finds that, on balance, it should exercise jurisdiction because all of the other factors weigh in favor of doing so. If the state action were pending in a Kentucky state court, the balance might well tip in favor of not exercising jurisdiction, however, since the state action is in a Florida court and West American is not party to that action, it seems unreasonable to force resolution in that forum. Thus, the Court finds that it should exercise its discretionary jurisdiction over this matter and will do so.

> 2.    <u>Whether Pleading "Subjective Intent" is Necessary to State a Claim</u>

To withstand a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need
> detailed factual allegations, a plaintiff's obligation to provide the grounds of his
> entitlement to relief requires more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will not do. Factual allegations
> must be enough to raise a right to relief above the speculative level.

*Id.* at 555 (citations and quotation marks omitted).  In ruling upon a motion to dismiss for failure

to state a claim pursuant to Rule 12(b)(6), all of a plaintiff's allegations are presumed true, and

the complaint is construed in the light most favorable to the plaintiff.  *Hill v. Blue Cross & Blue*

*Shield of Michigan*, 409 F.3d 710, 716 (6th Cir. 2005).  Under this standard, West American's

Complaint sufficiently states a claim.

Citing *James Graham Brown Foundation, Inc. v. St. Paul Fire & Marine Insurance Co.*,

814 S.W.2d 273, 278 (Ky. 1991), the Lewises argue that the Complaint should be dismissed for

failure to state an actionable claim because West American does not specifically allege that Mr.

Miller subjectively intended to harm Mr. Lewis.  Instead, the Complaint alleges that Mr. Miller's

actions were intended or expected.  Since the underlying tort complaint filed in Florida, upon

which the Complaint in this action is based, expressly and specifically alleges that Mr. Miller did

not intend any injury to Mr. Lewis, the Lewises argue that West American fails to state a claim.

In response, West American contends that the Complaint sufficiently states a claim

pursuant to modern notice pleading requirements.  West American argues that Mr. Miller's

altercation with Mr. Marks was inherently likely to cause injury to Mr. Marks and innocent

bystanders, such as Mr. Lewis, so Mr. Miller's subjective intent to cause harm is presumed as a

matter of law.  Further, it was unnecessary for West American to specifically plead that Mr.

Miller had "subjective intent" to injure Mr. Lewis or Mr. Marks for the policy exclusion to apply

because the doctrine of transferred intent or inferred intent applies.  West American argues that

this doctrine means that even if Mr. Miller intended to injure only Mr. Marks, he is presumed to

have intended the injuries sustained by Mr. Lewis as he stood between the two combatants.  The Lewises argue that the inferred intent doctrine does not apply because it is limited to specific situations, such as sexual molestation, which are not present here.

The general rule in Kentucky is that "if injury was not actually and subjectively intended or expected by the insured, coverage is provided even though the action giving rise to the injury itself was intentional and the injury foreseeable." *James Graham Brown Foundation, Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 278 (Ky. 1991).  Under the "inferred intent rule," which is an exception to the general rule, where the insured's conduct is both intentional and of such a nature and character that harm inheres in it, that conduct affords a sufficiently clear demonstration of intent to harm subsuming any need for a separate inquiry into capacity, so as to exclude liability coverage for harm that was intended by an insured.  *Kentucky Farm Bureau Mut. Ins. Co. v. Coyle*, 285 S.W.3d 299 (Ky. Ct. App. 2009).  Kentucky courts have applied this doctrine in the specific context of child molestation as the Lewises recognize.  Additionally, "they have not hesitated to apply the doctrine in other circumstances in which human experience tells us that the nature of the intentional act presumes an intention to do harm." *Id.* at 305.  For example, Kentucky courts have applied the doctrine where the insured pointed a rifle at another and pulled the trigger and where the insured punched another in the face.  *Id.*  Since the inferred intent doctrine may apply in this case, specifically pleading subjective intent was unnecessary and the complaint is sufficient to survive a motion to dismiss.

Summary judgment on West American's claim for Declaratory Judgment, however, is not appropriate at this time.  While the inferred intent rule may be sufficient to establish intent to harm such that the policy exclusion applies, it requires evaluation of state of mind issues.  State of mind issues, such as Mr. Miller's intent and expectation, are factual determinations and are

10

not typically appropriate determinations at the summary judgment stage. This is especially true when discovery has not been conducted.

On a final note, the parties argue about whether Mr. Miller's nolo contendere plea is proper evidence of his intent to injure Mr. Lewis. West American argues that the plea conclusively establishes that Mr. Miller intended to injure Mr. Lewis so the policy exclusion applies. Defendants argue that the plea is inadmissible and simply means that Mr. Miller acknowledged that the prosecutor had enough evidence to convict him, not that he actually committed the charged crime or that he had the requisite intent to commit the charged crime. The Court does not deem it necessary to rule on the admissibility issue at this time and will permit the parties to raise it at a later juncture.

### B. Motion for Discovery

Defendant, Sherry Miller, moved the Court for an order giving her an opportunity to take discovery prior to adjudication of West American's Motion for Declaratory Judgment. The Court finds that discovery is not necessary before it rules on the Motion for Declaratory Judgment and will deny her motion.

### C. Motion for Leave to File First Amended Counterclaim

Pursuant to Federal Rule of Civil Procedure 15, Miller requests leave to file a First Amended Counterclaim. West American argues that the motion should be denied because amending the counterclaim is futile because the allegations in the amended counterclaim do not state a sufficient claim. Federal Rule of Civil Procedure 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." While the amended counterclaim for bad faith may have little merit when examined under a summary judgment standard, it is not "futile" within the definition provided by the Sixth Circuit at the amendment to pleading stage.

11

The Sixth Circuit has explained that a "futile" amendment is one that could not withstand a Rule 12(b)(6) motion to dismiss. *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 518 (6th Cir. 2001). Since Miller's Amended Counterclaim could survive a Motion to Dismiss, justice requires that she be permitted to amend her pleading.

## III.    CONCLUSION

Accordingly, **IT IS ORDERED AS FOLLOWS**:

1)    The motion of defendants, Donald W. Lewis and Fran Lewis, to dismiss [DE 11] is **DENIED**;

2)    The motion of the plaintiff, West American Insurance Company, for declaratory judgment [DE 15] is **DENIED WITHOUT PREJUDICE TO REASSERT AT A LATER TIME**;

3)    The motion of defendant, Sherry Miller, for Discovery [DE 19] is **DENIED**; and

4)    The motion of defendant, Sherry Miller, for leave to file First Amended Counterclaim [DE 16] is **GRANTED**.  The Clerk is directed to file the tendered First Amended Counterclaim.

This March 31, 2010.



Signed By:

*Karl S. Forester*  $K S F$

**United States Senior Judge**